IN THE SUPREME COURT OF MISSISSIPPI
NO. 93-CA-00576-SCT

*ED SNAPP AND RUSSELL SNAPP*

*v.*

*JOHNNY HARRISON d/b/a HARRISON PAINTING
SERVICE*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/19/93 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID C. OWEN |
| ATTORNEY FOR APPELLEE: | DAN W. WEBB |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 9/4/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/25/97 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Ed and Russell Snapp appeal the order of the Lowndes County Circuit Court denying their motion for a new trial following a jury verdict in favor of Johnny Harrison. Finding that the jury properly considered the evidence before it in arriving at its decision, and that instructions given on the issue of negligence per se were harmless error, and not confusing; and that those instructions did fairly and accurately instruct the jury, we affirm the decision of the lower court.

## FACTS

¶2. Ed and Russell Snapp leased a warehouse bay on Military Road in Columbus, Mississippi, adjacent to one leased by Johnny Harrison d/b/a Harrison Painting Service. Harrison stored painting supplies at the warehouse, including at least 103 gallons of paint thinner which was placed along the wafer board party wall which separated his bay from that of the Snapps. The Snapps used their bay for the storage of personal property and for the storage of equipment from Ed Snapp's physical therapy practice.

¶3. On July 19, 1990, a fire started in the Harrison bay and quickly spread to that of the Snapps. The blaze was discovered about twenty minutes after Harrison's last employee had left for the day.

Firefighters were forced to use foam in addition to water to combat the fire because the paint thinner, much of which was stored in plastic buckets, had ignited, burning much hotter and faster than an ordinary fire. Harrison's property was destroyed and the Snapp's property sustained both fire and smoke damage.

¶4. The County Fire Investigator, the Deputy State Fire Marshall, and the Columbus Police Department investigated the fire scene. Their investigations showed that the fire was of undetermined origin and that a "human element" had been involved. At the time of trial, the Columbus Police Department still had an open arson file on the incident, listing Harrison as the victim.

¶5. The Snapps filed a complaint in the Lowndes County Circuit Court on October 18, 1991, alleging that their property was damaged as a result of Harrison's negligent storage of combustible materials. The complaint was later amended to include an allegation of negligence *per se* based upon violations of the Standard Building Code adopted on February 25, 1986, and City Ordinance § 12-4, enacted by the Columbus City Council on March 25, 1986, adopting the Standard Fire Prevention Code. The alleged violations included Harrison's failure to obtain a required permit to store paint thinner in an ordinary storage facility, storing Varsol paint thinner in larger containers than allowed by law, erecting three-quarter inch shelving instead of the minimum required one inch shelving, and failing to erect a minimum required two-hour fire wall.

¶6. A jury trial was held in February, 1993. The jury rendered a verdict in favor of Harrison. The Snapps then moved for a new trial on the grounds that the verdict was against the overwhelming weight of the evidence. The Circuit Court denied that motion. Aggrieved, the Snapps appeal.

## STANDARD OF REVIEW

¶7. The standard of review for jury verdicts in this state is well established. Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found. *Starcher v. Byrne*, 687 So. 2d 737, 739 (Miss. 1997); *Junior Food Stores, Inc. v. Rice*, 671 So.2d 67, 76 (Miss.1996); *Bell v. City of Bay St. Louis*, 467 So.2d 657, 660 (Miss.1985). Our standard for review is *de novo* in passing on questions of law. M*ississippi Farm Bureau Casualty Ins. Co. v. Curtis*, 678 So.2d 983, 987 (Miss.1996); *Seymour v. Brunswick Corp.*, 655 So.2d 892, 895 (Miss.1995).

¶8. This Court does not review jury instructions in isolation. Rather, instructions are read as a whole to determine if the jury was properly instructed. Accordingly, defects in specific instructions do not require reversal "where all instructions taken as a whole fairly--although not perfectly--announce the applicable primary rules of law." However, if those instructions do not fairly or adequately instruct the jury, this Court can and will reverse. *Starcher v. Byrne*, 687 So. 2d at 742-43; *Lovett v. Bradford,* 676 So.2d 893, 896-897 (Miss.1996); *Peoples Bank and Trust Company v. Cermack*, 658 So.2d 1352, 1356 (Miss.1995).

## DISCUSSION OF LAW

¶9. The Snapps cite three issues for appeal:

**I. WHETHER THE TRIAL JUDGE ERRED IN FAILING TO GRANT A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

**II. WHETHER THE TRIAL COURT ERRONEOUSLY ALLOWED THE DEFENSE TO SUBMIT A NEGLIGENCE *PER SE* INSTRUCTION WHEN THE DEFENDANT NEVER PLED NOR PROVED THAT THE PLAINTIFFS WERE NEGLIGENT *PER SE*.**

**III. WHETHER THE TRIAL COURT ERRONEOUSLY ALLOWED THE SUBMISSION OF A JURY INSTRUCTION REQUIRING THE PLAINTIFFS TO PROVE THE CAUSE OF THE IGNITION OF THE FIRE.**

In the interest of the economy of space and time, Issues I and III have been combined.

**I.**

**WHETHER THE TRIAL JUDGE ERRED IN FAILING TO GRANT A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

**III.**

**WHETHER THE TRIAL COURT ERRONEOUSLY ALLOWED THE SUBMISSION OF A JURY INSTRUCTION REQUIRING THE PLAINTIFFS TO PROVE THE CAUSE OF THE IGNITION OF THE FIRE.**

¶10. The Snapps base their claim that the verdict was against the overwhelming weight of the evidence upon the facts that the fire started in the Harrison bay and that "two fire fighters, three fire investigators and the Assistant Fire Chief all acknowledged that the [Varsol] burned and caused extreme smoke and fire damage to the plaintiffs goods." Further they base their claims upon the fact that Harrison was declared by the trial court to be negligent *per se* in that the paint thinner was (1) stored without a permit as required by § 402.11 of the city fire code; (2) stored without a two hour fire wall (a wall that would take an ordinary fire two hours to burn through) separating the Harrison storage bay from that of the Snapps, as required by § 904.6.4 of the city fire code; (3) stored in unregulated five gallon plastic containers as required by Table 904-A of the city fire code; and that (4) the 3/4 inch shelving above the Varsol was less than the one inch minimum shelving required by § 904.5.4 of the city fire code.

¶11. The Snapps claim that "if the Defendant would not have been negligent *per se* in his storage of Varsol, we would not be here today." The Snapps further claim that the evidence was so overwhelming that it could support only one theory: "that the Defendant was negligent and that his negligence was, *as a matter of law*, a proximate contributing cause of the plaintiffs extensive losses. (emphasis added).

¶12. Harrison argues that regardless of the violations of the fire code, there exists no proof of a causal connection between that negligence and the injuries claimed by the Snapps. Harrison also argues that because the origin of the fire is undetermined, no causal connection can be shown to exist

between Harrison or any of his employees and the fire.

¶13. We find two cases instructive to the case *sub judice*. In **Reid & Sibell, Inc. v. Gilmore and Edward Co.**, 285 P.2d 364 (Cal.App. 1955) the California Appellate Court held that although the storage of paint thinner which caught ablaze was negligence in that case, no liability applies unless that negligence was a proximate cause of the destruction of the plaintiffs goods. **Reid & Sibell, Inc**. at 369. That case also makes clear that whether negligence is a proximate contributing cause if the resulting fire is a jury question. **Reid & Sibell, Inc.**, at 371. In that case, the jury decided the question in favor of the plaintiffs, and that court did not disturb that jury's verdict.

¶14. In **Munford, Inc. v. Peterson**, 360 So. 2d 213, 217 (Miss. 1979), this Court stated that "when a statute is violated, the injured party is entitled to an instruction that the party violating the statute is guilty of negligence and, if that negligence proximately caused or contributed to the injury, then the injured party is entitled to recover." The plaintiffs in the case *sub judice* were granted this entitlement in Instruction P-6A, and admit as much in their brief at page 17.

¶15. These cases are enlightening because both make clear that the issue of proximate or contributing causation is one for the jury as long as there is adequate support in the record for the jury's finding. These holdings are in direct contravention of the Snapps' claims that the issue of proximate causation is one of law. Therefore, if there is credible evidence in the record to support the finding that there was no causal connection between Harrison's negligence *per se* and the fire which destroyed the Snapps' property, the trial judge was correct in denying the motion for a new trial.

¶16. The Snapps put on several witnesses who had investigated the fire. None of them could hazard a guess as to how the fire started, and all agreed that it is not unusual for a fire investigator to be unable to find the ignition source. However, all of them agreed that the mere presence of the Varsol was insufficient to start this fire. The Snapp's expert, Assistant Fire Chief Ronnie Smith, on cross examination, went so far as to agree that no fire code violations by Harrison "had anything to do with the cause or origin of the fire in any form or fashion." This Court has always condemned the use of "possible" and "could have" evidence in negligence cases. **Carpenter v. Nobile**, 620 So. 2d 961, 965 (Miss. 1993); **Foster v. State**, 508 So. 2d 1111, 1118 (Miss. 1987). The jury correctly evaluated the testimony and did not resort to guesswork to find the missing piece of the puzzle--causation.

¶17. The Snapps also assign as error the fact that the trial court granted Harrison jury instruction D-18A. That instruction required the jury to find that Harrison or one of his employees put in motion the events through which the damage occurred. It further required that without such a finding, the verdict should be for the defense.

¶18. The Snapps argue that several witnesses testified that it is not unusual to be unable to find the ignition source. Therefore, a fire victim would never be able to recover for losses unless he could demonstrate exactly how the fire started. We find this argument unavailing for two reasons: (1) to adhere to such an argument would create a different standard of liability in fire or arson cases, whereby it would be sufficient to find that a fire started on property belonging to the defendant without having to prove that an act of the defendant, or a failure to act, was the proximate cause of the damages suffered by any plaintiff; (2) the Snapps' own witness, Assistant Fire Chief Smith, agreed unequivocally on cross-examination that the damages suffered by the Snapps had nothing to do with the storage of Varsol in the Harrison bay. After a consideration of the evidence, it is apparent that the

jury took this testimony literally. As a result, we find that Instruction D-18A was given based upon evidence within the record, and the instruction was properly followed by the jury. Therefore, we find this assignment of error to be meritless.

## II.

**WHETHER THE TRIAL COURT ERRONEOUSLY ALLOWED THE DEFENSE TO SUBMIT A NEGLIGENCE *PER SE* INSTRUCTION WHEN THE DEFENDANT NEVER PLED NOR PROVED THAT THE PLAINTIFFS WERE NEGLIGENT *PER SE*.**

¶19. The Snapps next contend that the trial court erred in granting Harrison a negligence *per se* instruction finding that the Snapps were negligent *per se* as a matter of law because they kept their storage bay in disarray, and that such disarray was in violation of the fire code. Such an instruction amounted to a comparative negligence instruction because it allowed the jury to consider whether negligence on the part of the Snapps was a proximate contributing cause of the damages suffered by them. The Snapps argue that this is reversible error threefold: (1) because negligence *per se* was not specifically pled, therefore, the Snapps were not prepared to defend any allegations of illegal activity on their own part; (2) under M.R.C.P. 9(d), one pleading a municipal ordinance as a defense must identify specifically the ordinance that the opposing party is supposed to have violated. Thus, they argue that the failure to do so constituted a bar from asserting negligence *per se* as an affirmative defense; (3) the *per se* violation by the Snapps was never shown to be designed to protect Harrison.

¶20. Harrison argues that they claimed the negligence of the Snapps in the Answer to the Complaint as well as in the Pretrial Order. They further argue that the issue was tried by implied consent because the Snapps did not object to the testimony elicited on cross examination of their witness, even though the Snapps' own negligence *per se* had not been pled by the defense.

¶21. Harrison did clearly plead that the Snapps' own negligence was a proximate contributing cause of their losses, and it is not clear on its face that M.R.C.P. 9(d) has any application where it regards a pleading of negligence *per se* as an affirmative defense. Further, as a result of the fact that Harrison did plead contributory negligence, it is not necessary to determine whether the issue was tried by implied consent. Negligence *per se* is a subset of negligence in general, whether it be contributory, comparative or otherwise. Thus, a pleading of negligence on the part of the Snapps would encompass negligence *per se*. Given that the negligence of the Snapps was indeed pled in the Answer to the complaint as well as the Answer to the Amended Complaint, it would appear that any questions as to the condition of the Snapp bay would be aimed at showing negligence on the part of the Snapps, an issue which had been pled.

¶22. However, the question to be answered is whether or not Harrison should have gotten the benefit of a negligence *per se* instruction. To prevail in an action for negligence *per se*, a party must prove that he was a member of the class sought to be protected under the statute, that his injuries were of a type sought to be avoided, and that violation of the statute proximately caused his injuries. ***Thomas v. McDonald***, 667 So. 2d 594, 597 (Miss. 1995). The only assertion of a violation of the fire code by the Snapps was made by Assistant Fire Chief Smith. He testified that the Snapps' bay was organized in such disarray as to prevent firefighters from entering and exiting the bay.

¶23. The Snapps arguably violated Chapter 8 of the fire code dealing with egress and obstructions

within buildings. The purpose of the statute is to allow free travel to the interior of the building to fight fire, or to escape fire. The parties sought to be protected are those within the bay itself and those with property inside. Harrison had no property or employees within the Snapp bay. He does not claim that he suffered any losses from the Snapps violation; rather, he claims that the Snapps' own losses were at least in part a result of this alleged violation of the fire code. As a result, Harrison has not shown that he is a party sought to be protected under the ordinance, and should not have gotten the benefit of the instruction.

¶24. However, we do not think that the fact that Harrison received the benefit of this instruction was fatal to the Snapps' claim. The comparative negligence instruction given, while erroneously acknowledging negligence *per se* on the part of the Snapps, does not dictate a verdict for Harrison. Instead, it directs the jury to reduce the damages awarded to the plaintiff. Neither does the instruction tell the jury that negligence *per se* could be the sole proximate cause of the injury. The jury reached a verdict for the defendant. Therefore, we find that the giving of this negligence *per se* instruction under the facts of this case was harmless error.

## CONCLUSION

¶25. We find that the verdict of the jury was not against the overwhelming weight of the evidence in that there was no evidence of a causal link shown at trial, and we therefore affirm the decision of the trial court to deny the motion for a new trial. Neither was there error in granting a defense instruction dictating the finding of a causal link between the negligence *per se* of the defendant and the damages suffered by the plaintiffs. We also find that the granting of a negligence *per se*instruction to the defense was harmless error.

¶26. **JUDGMENT AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, ROBERTS AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**


**McRAE, JUSTICE, DISSENTING:**


¶27. I disagree with the majority's determination that instructing the jury on the issue of the Snapp's per se negligence was harmless error and further, that the instructions given fairly and accurately instructed the jury. Because the verdict is so contrary to the weight of the evidence, the instructions given clearly were confusing and provided neither fair nor adequate direction for the jurors. Accordingly, the case should be reversed and remanded for a new trial.

I.

¶28. Instruction D-20A instructed the jury that the Snapps "were negligent in violating the Standard Fire Prevention Code of the City of Columbus by failing to properly store and maintain the materials stored in their warehouse bay." It is well settled that "[a] party . . . is entitled to have jury instructions given regarding all material issues presented in the pleadings or evidence." *Glorioso v. Young Men's*

***Christian Association of Jackson***, 556 So. 2d 293, 295 (Miss. 1989); ***Barkley v. Miller Transporters, Inc.,*** 450 So. 2d 416, 419 (Miss. 1984). Likewise, a party is entitled to have his theory of the case presented to the jury through instructions, provided there is evidence to support it. ***Tharp v. Bunge Corp.,*** 641 So. 2d 20, 27 (Miss. 1994); ***Alley v. Praschak Machinery Co.***, 366 So.2d 661, 665 (Miss. 1979); ***PACCAR Financial Corp. v. Howard***, 615 So. 2d 583, 590 (Miss. 1993). Harrison raised as a defense in his answer to the amended complaint only that the Snapps "totally failed to exercise reasonable care for the property they have alleged was destroyed and the damage alleged to have been incurred solely and proximately resulted from plaintiff's own negligence." Negligence per se was not specifically raised nor was the particular ordinance allegedly violated identified as required by M.R.C.P. 9(d). No specific ordinance violation was raised at trial. There was merely testimony by the Fire Chief that the Snapps' storage bay was in disarray and that, in his opinion, this was in violation of "the code." Thus, the issue of any negligence per se on the part of the Snapps was neither in the pleadings nor in evidence and the jury should not have been so instructed.

II.

¶29. Jury instruction D-18A acknowledged Harrison's per se negligence, but required the Snapps to prove that Harrison or his agents "put in motion the events through which the damage occurred." We have stated that "[w]hen a statute is violated, the injured party is entitled to an instruction that the party violating the statute is guilty of negligence, and, if the negligence proximately caused *or contributed* to the injury, the plaintiffs [are] entitled to recover." ***Munford, Inc. v. Peterson***, 368 So. 2d 213, 217 (Miss. 1979)(emphasis added). Thus, the instruction improperly required the Snapps to prove the exact cause of the fire in order to recover against Harrison.

¶30. Witness after witness testified to the difficulty of establishing the exact cause of a fire because the "only missing element [in fire investigations] . . . is the ignition source." Fire investigators often cannot determine the exact source of a fire because it is usually consumed by the blaze. The Snapps were not required to show the exact ignition source of the blaze that damaged their warehouse bay. Rather, they needed only to show that an ordinance or statute was violated, that they were a part of the class intended to be protected, that the injuries suffered were those intended to be prevented, and that the violation either caused or contributed to their injuries. ***Thomas v. McDonald,*** 667 So. 2d 594, 596 (Miss. 1995). For the defendant to be liable, it is not necessary for his negligence to have been the sole cause of the injury. ***Mississippi Power & Light Co. v. Walters***, 158 So. 2d 2, 20 (Miss. 1963). "[W]here the negligence of a defendant results in a condition dangerous in itself, such as an ordinarily prudent person ought to have anticipated might occur, he is liable for any damage resulting therefrom, even though a particular injury complained of would not have resulted, had not the negligence of a third person combined with his." ***Holifield v. Nester Chevrolet Co., Inc.,*** 207 So. 2d 636, 639 (Miss. 1968).

¶31. Harrison's storage of paint thinner in violation of the City's Fire Protection Code, in and of itself, created the sort of dangerous condition a reasonable person should have anticipated. The ignition of a highly flammable substance, its rapid spread to others' property and the damage resulting therefrom are the sort of consequences the ordinances were intended to prevent. The Snapps, as lessors of the adjacent storage bay, were among the class intended to be protected. Harrison's per se negligence was, as the evidence clearly showed, a proximate contributing cause to the Snapps' injuries. *See* ***Meridian Hatcheries, Inc. v. Troutman,*** 93 So. 2d 472, 478 (Miss. 1957)(where accident caused by

bus illegally parked so as to obstruct stop sign and ordinance was intended to prevent such injuries, this Court cited with approval *Cumberland Telephone & Telegraph Co. v. Woodham,* 99 Miss. 318, 332-334, 54 So. 890, 891(1910) for the proposition that "a defendant is negligent, and this negligence combines with that of another or with any other intervening cause, he is liable, although his negligence is not the sole negligence, or the sole proximate cause, and although his negligence, without such other independent intervening cause, would not have produced the injury."). The Snapps were not required to make any further showing and it was error for the jury to be instructed otherwise.

## III.

¶32. Jury instructions must be read as a whole. Where two or more instructions are in conflict with each other, it is reversible error. *Payne v. Rain Forest Nurseries, Inc.*, 540 So. 2d 35, 40-41 (Miss. 1989). "[I]f those instructions do not fairly or adequately instruct the jury, we can and will reverse." *Burton v. Barnett,* 615 So. 2d at 580, 583 (Miss. 1993). Without any instructions on comparative or contributory negligence, jurors were advised that if they found the Snapps had violated the city's fire code by not maintaining their storage bay in a more orderly fashion and that that disorder contributed to their damages, they could reduce the amount of damages by any negligence attributable to the plaintiffs. They further were presented with a form verdict which made no provision for the apportionment of damages. *Burton,* 615 So. 2d at 582. Further, Harrison did not specifically plead negligence per se nor did the evidence show that the Snapps violated any ordinance. Thus, the granting of Instruction D20-A was not mere harmless error. Moreover, Instruction D-18A, which required the Snapps to prove that Harrison or one of his employees actually set in motion the events that started the fire that damaged their property is not a correct statement of the law. Accordingly, as the verdict absolving Harrison of any liability clearly shows, the jury instructions were confusing and the case should be reversed and remanded for a new trial. Accordingly, I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**